Scott, Chief Judge.
The sufficiency of the plaintiffs’ petition, in the court below, is denied by counsel for defendant on several distinct grounds. One ground of objection is, that the directors of the railroad company had no power or authority, under the charter of the company, without the sanction of its stockholders, to make the bonds which they issued convertible into capital stock ; and the power of both directors and stockholders to issue convertible bonds, for the purpose for which these bonds were issued, is also denied. This question of power has been discussed *112 at length, and with ability, by counsel. But we do not deem it necessary to determine this question of power, and shall consider the sufficiency of the petition on the assumption that the president and directors of the company were fully authorized by law to issue and negotiate the bonds in the form given to them by the convertible clause indorsed thereon.
¥e think each of these bonds, considered in connection with the clause for conversion, may be regarded as an alternative contract, wholly executory on the part of the defendant. The obligations of this contract might be discharged in one or the other of two ways; and it was at the option of the holder of any of the bonds to determine in which of the two ways he would require them to be satisfied. He might wholly waive his right to have them converted into stock; might demand and receive payment of the interest as it accrued on them, and of the principal sum at maturity. If he accepted payment in this way, the contract would be fully discharged, and he would have no ground to complain that it had not been otherwise discharged. Or he might, at any time before its full discharge in this mode, demand the conversion of the principal sum named in the bond into capital stock, tendering his bond, at the same time, with the annexed interest coupons not yet matured, for cancellation. If this demand were complied with, and the stock issued and delivered to him, then the obligations of the contract would be fully discharged and satisfied in the other mode.
But if the company were to refuse the conversion of the bond into stock upon his demand, several courses would be open to him at his election. 1. He might waive, for the present, the right thus denied him, continue -to draw his interest as it might accrue, and demand the principal at maturity, or renew his demand for conversion at any time thereafter before the payment of the principal:
Or, 2. He might divest himself of all interest in the subject-matter, and invest another party with all his rights, including the right of election as to the mode of performing the contract, by the sale and transfer of the bond.
Orj 3. He might Stand üpoü and abide by the election *113 and demand already made, and on his right to convert the bond into capital stock; and might by action recover,by way of damages for the breach of the contract, the full market value of the stock wrongfully withheld from him. But such recovery would be a bar to any other or further suit on the bond ; and the payment of such damages would place the defendant in the same legal position as though the stock had been issued upon demand.
And in case such action were brought for the refusal to convert the bond into stock, we think it very clear, that the plaintiff must allege in his petition not only his ownership of the bond at the time of the demand for conversion, and that he then offered to surrender it for cancellation upon such conversion ; but that he was still the owner and holder of such bond, and now brought it into court for cancellation upon his recovery of damages for the breach of its stipulations.
But in regard to a large portion of the bonds out of which the plaintiffs’ supposed causes of action arise in this ease, the petition does not allege that the. plaintiffs were ever the owners or holders of them; nor does it allege that at the time of bringing suit they were the owners or holders of any of them. For aught that appears in the petition, every one of the bonds in question may,before suit brought,have passed into the hands of other bona fide holders by transfer after the several demands for conversion stated in the petition. And, non constat, but that the transferees may have demanded and obtained their conversion into capital stock. Non constat, but that they may have waived all right to claim anything in virtue of previous demands for conversion, by accepting and receiving payment of installments of interest subsequently accruing, and thus continuing to treat these bonds as mere obligations to pay money. Non constat, but that as these bonds matured several years ago, the holders of them may have accepted and received payment in full both of principal and interest in money, and thereby have forever waived. *114 and abandoned all rights under the so-called convertible clause.
The holder of such a bond would have the option to regard it either as an obligation to pay money or an obligation to deliver stock. But as it is not an obligation to do both, so long as the holder continued to treat it as an obligation to pay money, he would have no right to regard it, at the same time, as an obligation to deliver stock.
According to the theory on which the plaintiffs’ petition proceeds, as we understand it, A, being the holder of one of these convertible bonds, might demand its conversion into stock; and, upon the defendant’s refusal to issue the stock, he might assign his right of action for this breach of contract to B, but retain the bond, which he might afterward sell and transfer to C, who, being the bona fide holder*, might again demand its conversion, and this process might be continued indefinitely; and thus the defendant might become liable to answer in damages to an indefinite number of successive holders of the same identical bond, for the breach of a stipulation which the contract required to be performed but once. Consequences so preposterous ■would seem to indicate very clearly that such a theory is wholly untenable.
The truth is, as we apprehend, that by the express terms «of this convertible clause, the conversion of the bond into fStock is made to depend wholly upon the pleasure of the sholder of the bond. The right to demand its conversion is ■vested in him just so long as he continues to be such ^holder and no longer. And when he transfers the bond, ■the right of choosing whether it shall be converted into : stock or not, passes by the transfer to the new owner and holder, and no right of action for its non-conversion remains in the former owner. The terms of the clause clearly connect the right of conversion with the ownership of the bond .-.as indissolubly as a mortgage is connected with the debt, the payment of which it secures.
It is alleged in the petition that the convertible clause was indorsed on the bonds for the purpose of making them *115 more valuable; and indeed it is difficult to conceive why such a privilege should be conferred on a holder, except for the purpose of enhancing the value of the bonds, and thus rendering them more salable in the market. But this enhanced value in the market can only arise from the fact that the contract of the railroad company is with the holder of the bond; and that each successive holder takes, with the bond, the right to demand its conversion into capital stock.
When the holder of such a bond sells and transfers it, he sells and receives payment for a convertible, not an inconvertible bond; and obtains from his sale the supposed value of the convertible clause, as well as of the naked bond. Both pass together, and the price received is the agreed value of both. If, after such sale and transfer, he can again recover from the company, by way of damages, the value of this convertible clause, it is clear that he would receive double payment for the same identical property. And we think it very clear that a naked right of action, for a breach of an executory contract, can not be assigned to another, whilst the assignor remains the absolute owner of the entire contract, and is still entitled to retain for himself, or transfer to a third party, the full benefit of all its stipulations, and it is just as clear, that one can not trausfer to another the full benefit of all the stipulations of an executory contract which he holds, and afterwards maintain an action to recover damages for the breach of any of such stipulations.
The vice of the petition before us seems to lie in the assumption that the refusal of the defendant to issue its stock, on plaintiffs’ demand, changed the contract of the parties, and rendered the bonds inconvertible. But, it is a mistake to suppose that the obligations of a contract are modified by their violation by one of the parties.
The convertible clause, upon which this action is brought, was, by its terms, inseparably connected with the bonds on which it was indorsed, and made available only to the person who should be the holder of them. And as the petb *116 tion does not aver that the plaintiffs were, at the commencement of their action, the owners and holders of any of the convertible bonds issued by the defendant, we think it is therein fatally defective, and that the demurrer to it was properly sustained by the court below.

Judgment affirmed.